Celia McGuinness (SBN 159420)
*cmcguinness@mcguinness-legal.com*
Liza Cristol-Deman (SBN 190516)
*lcristoldeman@mcguinness-legal.com*
McGUINNESS LAW GROUP, PC
155 Grand Avenue, Suite 900
Oakland, CA 94612
Telephone: (510) 439-2950
Facsimile: (510) 439-2951

Attorneys for Plaintiff Erica Davis-Chenault

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERICA DAVIS-CHENAULT, <br><br> Plaintiff, <br><br> vs. <br><br> DWF VI VMG ALLSTON, LLC and VAUGHN MANAGEMENT GROUP, INC. <br><br> Defendants. | Case No. <br><br> **COMPLAINT FOR DECLARATORY, INJUNCTIVE, AND MONETARY RELIEF; DEMAND FOR TRIAL BY JURY** |

## I.    INTRODUCTION

1.    Erica Davis-Chenault is a resident of the apartment building known as "Allston Place," located at 2161 Allston Way in Berkeley, California. As a person with a disability that substantially limits her mobility, Davis-Chenault relies on a working elevator to get to and from her dwelling, which is located on the fourth floor of Allston Place. The only elevator at Allston Place was out of service for three weeks between January 27 and February 17, 2026, substantially restricting Davis-Chenault's access to and egress from her unit because of her impaired ability to use stairs. The elevator outage effectively forced Davis-Chenault to travel up and down four flights of stairs or remain trapped in her apartment. Davis-Chenault experienced intense pain, physical strain, and difficulty when she had no choice but to use the stairs.

COMPLAINT FOR DECLARATORY,                         1                         Case No.
INJUNCTIVE, AND MONETARY RELIEF

Defendants' sole offer of assistance was to carry packages upstairs for her, in violation of local, state, and federal laws that require a housing provider to offer alternative housing to residents with mobility impairments during an elevator outage or make other accommodations to ensure that residents with mobility disabilities, such as Davis-Chenault, have full and equal access to, and enjoyment of, their dwelling.

## II.   JURISDICTION AND VENUE

2.     This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331. Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over plaintiff's state law claims since those state law claims arise out of a common nucleus of operative facts, and form part of the same case or controversy under Article III of the United States Constitution.

3.     Venue is proper because the claims alleged in this complaint arose from unlawful conduct occurring in Alameda County, California, where the real property at the center of this action is located.

## III.   INTRADISTRICT ASSIGNMENT

4.     Pursuant to Civil L.R. 3-2(c), assignment to the San Francisco or Oakland Division is proper here because the action arose in Alameda County.

## IV.   PARTIES

5.     Plaintiff Erica Davis-Chenault is a person with a handicap within the meaning of the Fair Housing Act, 42 U.S.C. § 3602 (h), and a person with a disability within the meaning of the Fair Employment and Housing Act (FEHA), Cal. Govt. Code §§ 12926, and the Disabled Persons Act, Cal. Civil Code § 54.1. She has medical conditions that substantially limit major life activities, including walking. She is especially limited in her ability to use stairs without excessive pain and strain.

6.     Davis-Chenault has resided in apartment 407 of the Allston Place Apartments ("Allston Place") continually since October 2023. Apartment 407 is located on the fourth floor. Davis-Chenault resides alone.

7.     Allston Place has approximately 60 dwelling units that are rented to members of

COMPLAINT FOR DECLARATORY,                    2                    Case No.
INJUNCTIVE, AND MONETARY RELIEF

the public. Allston Place and all apartment units within Allston Place constitute dwellings under the Fair Housing Act, 42 U.S.C. § 3602 (b), and housing accommodations within the meaning of FEHA, Cal. Gov. Code § 12927 (d).

8.      Defendant DWF VI VMG Allston, LLC ("DWF") is a Delaware limited liability company registered with the California Secretary of State. According to public records, it has been the owner of Allston Place Apartments since approximately January 2022. DWF is an owner within the meaning of FEHA, Cal. Gov. Code § 12927 (e).

9.      Defendant Vaughn Management Group, Inc. ("Vaughn") is a California corporation that serves as the management company at the Allston Place Apartments. Vaughn has served as the management company at Allston Place at all times relevant herein. Vaughn is an owner within the meaning of FEHA, Cal. Gov. Code § 12927 (e).

10.     Each defendant and Allston Place constitute business establishments within the meaning of the Unruh Act, Cal. Civ. Code § 51.

11.     In doing the acts alleged herein, each defendant was acting within the course and scope of its actual or apparent authority pursuant to an agency relationship. Plaintiff is further informed and believes, and thereon alleges, that each Defendant herein, including their managing agents and owners, gave consent to, ratified and/or authorized the acts alleged herein to the other Defendant. Each defendant is directly or vicariously liable for the unlawful housing practices alleged in this complaint for the defendant's own conduct, or for failing to take prompt action to correct and end an unlawful housing practice by that defendant's employee or agent, where the defendant knew or should have known of the unlawful conduct.

12.     Each defendant is also vicariously liable for unlawful conduct by the defendant's agent or employee, regardless of whether the defendant knew or should have known of the conduct that resulted in the unlawful housing practice, consistent with agency law.

## V.      FACTUAL ALLEGATIONS

13.     Allston Place is a five-story building, with residential dwelling units located on the second, third, fourth, and fifth floors. There is one elevator available for use by residents,

which serves as the sole method of ingress and egress for those who are mobility-impaired.

14.    Allston Place was constructed in the year 2002, and its public and common use areas available to the general public when accompanying or visiting a tenant were required to be designed and constructed according to the Standards for Accessible Design, 28 C.F.R. § 36.401; 28 C.F.R. Pt. 36 Appendix A (1991 ADA Standards for Accessible Design), as amended at 28 C.F.R. Pt. 36 Appendix D (1997 ADA Standards for Accessible Design) (hereinafter, the "ADA Standards") and Title 24 Cal. Code of Regulations ("California Building Code").

15.    Allston Place was first occupied in the year 2002. Its public and common use areas were required to be "readily accessible and useable" by handicapped persons. This would include an accessible path of travel from public transportation and private parking to the dwelling unit. Such path of travel in a multi-story building necessarily requires a useable and accessible elevator. Further, the dwelling units at Allston Place are required to contain the "features of accessible design" including an accessible route through the dwelling unit, accessible locations for light switches, electrical outlets, thermostats and other environmental controls, reinforced bathroom walls for the later installation of grab bars and accessible kitchens and bathrooms. Defendants have the obligation to maintain these accessible features in good and operable condition.

16.    All the dwelling units at Allston Place are above the ground floor. Persons with mobility impairments due to disabilities must use an elevator to reach the front door of their dwelling units. Thus, an elevator is a necessary part of the accessible path of travel to all dwelling units occupied by someone with a disability that impairs their use of stairs, such as Davis-Chenault.

17.    Defendants have been aware of Davis-Chenault's disability[1] since at least March 2024, when Davis-Chenault shared information with a Vaughn employee regarding upcoming surgeries. In August 2024, Davis-Chenault also requested a reasonable accommodation to allow a caregiver to stay with her as needed due to her medical condition and disabilities. In October

---

[1] The Fair Housing Act uses the term "handicap," but Plaintiff uses the term "disability" and "handicap" interchangeably throughout the complaint.

COMPLAINT FOR DECLARATORY,                    4                    Case No.
INJUNCTIVE, AND MONETARY RELIEF

2024, Davis-Chenault provided defendants with a letter from her medical provider at UCSF supporting her request for a caregiver to assist with her "independent activities of daily living because of a chronic medical condition." Again, in June 2025, Davis-Chenault told Vaughn agents that she was recovering from surgery and other complications following a car accident.

18. As a person with a disability and chronic medical conditions, Erica Davis-Chenault requires a working elevator to get to and from her apartment on the fourth floor.

19. Throughout Davis-Chenault's tenancy, the only elevator at Allston Place has periodically been out of service. For the first two years of Davis-Chenault's tenancy, 2023-2025, the outages would sometimes last for several hours, and other times they would last for several days. These outages forced Davis-Chenault to use the stairs when she needed to come and go from her unit, which caused her to experience pain and distress.

20. On or about January 27, 2026, the only elevator in the building went out of service again. Davis-Chenault received a notice by email from Vaughn stating that the elevator would be fixed "soon." Based on her past experience and management's assurances, Davis-Chenault assumed that the elevator would be repaired within hours or several days at the most.

21. In fact, the elevator outage lasted for three weeks. The elevator was not repaired and placed back in service until February 17, 2026.

22. During this extended outage, Davis-Chenault had no choice but to use the stairs to attend appointments, shop for groceries and other necessities, collect mail, and go about her daily life. Traversing four flights of stairs was a tremendous hardship for her. It caused her considerable pain, strained her body, and caused her to experience emotional distress.

23. During the first week of the outage, Davis-Chenault saw one of the assistant managers employed by Vaughn. Davis-Chenault asked her when the elevator would be fixed. The assistant manager told her that it should be fixed soon, but she did not provide any further details.

24. On January 30, 2026, Vaughn issued a notice to tenants stating that the elevator would be out until at least February 9, 2026. The elevator was still not in service by that date.

25. On February 9, 2026, Vaughn issued a notice to tenants stating that the elevator

COMPLAINT FOR DECLARATORY,                    5                    Case No.
INJUNCTIVE, AND MONETARY RELIEF

repairs were not yet completed. The notice did not provide any expected date of completion.

26. On February 10, 2026, Davis-Chenault emailed Breana Nguyen, a Vaughn employee with the title "Community Director." In her email, Davis-Chenault reminded Nguyen that that she previously disclosed mobility impairments, and that using the stairs during the elevator outage exacerbated her pain and increased her need for medication. Davis-Chenault disclosed that she was scheduled to receive a spinal injection from her physician, and that any strain and physical exertion associated with using the stairs would be especially painful in the hours following the injection. She added, "I have real concerns about my ability to safely manage the stairs afterward." She closed by stating that she would appreciate any assistance.

27. On February 12, 2026, Davis-Chenault received an email from Nguyen. Nguyen apologized for the challenges caused by the elevator outage and offered assistance with "bringing up packages or groceries" during business hours.

28. Davis-Chenault had no choice but to traverse the four flights of stairs to and from her unit for her spinal injection. She struggled to get up each and every step following the procedure, taking frequent breaks to rest. Climbing the stairs caused her intense pain, anxiety, frustration, and distress.

29. On the morning of February 17, 2026, the elevator remained out of service for the twenty-second consecutive day.

30. On February 17, 2026, at 11:30 a.m., Davis-Chenault emailed and texted Nguyen. She stated that a second spinal procedure was scheduled for February 18, and that she would not have the strength or stability to use the stairs following the procedure. She stated that traversing the four flights of stairs during the elevator outage had significantly aggravated her medical condition and required an increase in medical treatment to manage the pain. She added that she appreciated the offer to help with carrying packages, but that "my primary concern is getting up and down the stairs myself during recovery." She requested temporary accommodations, such as a transfer to a "lower-level unit [or] short-term hotel assistance" during the elevator outage.

31. On the same date, February 17, 2026, at approximately 3:00 p.m., the elevator was returned to service. Nguyen emailed Davis-Chenault to let her know.

COMPLAINT FOR DECLARATORY, INJUNCTIVE, AND MONETARY RELIEF

6

Case No.

32. At no point did any defendant or their agents offer Davis-Chenault temporary housing in a lower-level unit during the elevator outage. At no point did any defendant or their agents advise Davis-Chenault that she had the right to rent a hotel room or temporary housing during the elevator outage at defendant's expense, pursuant to Berkeley Municipal Code § 19.50.040.

33. Throughout the outage, Davis-Chenault struggled to get up and down the stairs due to her medical condition and disability, causing her to experience an increase in pain, physical strain, anxiety, embarrassment, and stress. Davis-Chenault reasonably fears that the elevator will go out of service again at any time, and for any length of time, causing her to suffer injuries. Defendants have a pattern and practice of not maintaining the elevator and refusing to offer reasonable accommodations when the elevator is out of service. These actions and inactions are taken in reckless and conscious disregard of the rights and needs of tenants with disabilities, including Plaintiff.

## VI. INJURIES

34. As a result of Defendants' discriminatory and wrongful conduct, Plaintiff has suffered emotional distress with attendant physical symptoms, including frustration, embarrassment, pain, violation of her civil rights, and loss of dignity. Accordingly, Plaintiff is entitled to recover compensatory damages pursuant to the federal Fair Housing Act, California's Fair Employment and Housing Act, and related laws.

35. In doing the acts of which Plaintiff complains, Defendants acted intentionally and with oppression, malice, and conscious or reckless disregard of Plaintiff's fair housing rights. Accordingly, Plaintiff is entitled to recover punitive and treble damages.

36. Defendants' failure to timely repair the elevator or provide alternative housing restricted Davis-Chenault's and other tenants' access to and egress from their unit because of their impaired ability to use stairs as a result of disabilities, medical conditions, or illnesses. Accordingly, Davis-Chenault is entitled to actual, statutory, and treble damages.

37. Unless enjoined, Defendants will continue to engage in the unlawful acts and in

COMPLAINT FOR DECLARATORY,                    7                    Case No.
INJUNCTIVE, AND MONETARY RELIEF

the pattern or practice of discrimination described above. Plaintiff has no adequate remedy at law. Plaintiff is now suffering and will continue to suffer irreparable injury from Defendants' acts and its pattern or practice of discrimination unless relief is provided by the Court. Accordingly, Plaintiff is entitled to injunctive relief.

## VII.   LEGAL CLAIMS
### A.  FIRST CLAIM
### VIOLATION OF THE FAIR HOUSING ACT
**[42 U.S.C. § 3601 et seq.]**

38.      Plaintiff realleges and incorporates by reference, as if fully set forth herein, the factual allegations contained in the preceding paragraphs.

39.      Each defendant, directly and vicariously, is liable for the commission of the following discriminatory housing practices, in violation of the Fair Housing Act:

    a.   Discriminating in the rental of housing, or to otherwise make unavailable or deny, a dwelling to a renter because of disability, 42 U.S.C. § 3604 (f)(1);

    b.   Discriminating against any person in the terms, conditions, or privileges of rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of disability, 42 U.S.C. § 3604(f)(2);

    c.   Refusing to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford a disabled person equal opportunity to use and enjoy a dwelling, 42 U.S.C. § 3604(f)(3)(B);

    d.   Failing to maintain an accessible route into a dwelling and through the public use and common areas readily accessible to and usable by people with disabilities, 42 U.S.C. § 3604(f)(3)(C).

40.      Plaintiff was injured by each of these discriminatory housing practices and is an aggrieved person as defined in the FHA, 42 U.S.C. § 3602 (i). Accordingly, she is entitled to

relief under 42 U.S.C. § 3613.

## B.  SECOND CLAIM
### VIOLATION OF CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT
**[Cal. Gov't Code § 12955 et seq.]**

41.    Plaintiff realleges and incorporates by reference, as if fully set forth herein, the factual allegations contained in the preceding paragraphs.

42.    Each defendant, directly and vicariously, is liable for the commission of the following discriminatory housing practices in violation of the Fair Employment and Housing Act:

    a.    Discriminating against any person because of disability, Gov. Code § 12955 (a);

    b.    Otherwise making a dwelling unavailable because of disability, Gov. Code § 12955 (k);

    c.    Discriminating by providing inferior terms, conditions, privileges, facilities, or services in connection with a housing accommodation based on disability, Gov. Code 12927 (c)(1);

    d.    Refusing to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford a disabled person equal opportunity to use and enjoy a dwelling, Gov. Code § 12927 (c)(1);

    e.    Failing to maintain a covered multifamily dwelling in a manner that allows access to, and use by, disabled persons, including but not limited to ensuring an accessible route into a covered dwelling unit, Gov. Code § 12955.1 (a) *et seq*.

43.    Plaintiff was injured by each of these discriminatory housing practices and is an

COMPLAINT FOR DECLARATORY,           9           Case No.
INJUNCTIVE, AND MONETARY RELIEF

aggrieved person as defined by FEHA, Government Code § 12927 (g). Accordingly, she is entitled to relief under Government Code § 12989.1.

## C.  THIRD CLAIM
### VIOLATION OF CALIFORNIA UNRUH CIVIL RIGHTS ACT
### [Cal. Civil Code § 51 et seq.]

44.    Plaintiff realleges and incorporates by reference, as if fully set forth herein, the factual allegations contained in the preceding paragraphs.

45.    Defendants, and each of them, are a business establishment within the meaning of the Unruh Act in that they own and operate a housing accommodation. Allston Place is also a business establishment within the meaning of the Unruh Act.

46.    Defendants have the obligation to maintain the elevator as an accessible path of travel, under the California Building Code and the Berkeley Municipal Code.

47.    Defendants have denied Davis-Chenault full and equal accommodations, advantages, facilities, privileges, or services in her housing accommodation by failing to timely repair the elevator or provide alternative housing when the elevator outage restricted Davis-Chenault's access to and egress from her unit because of her impaired ability to use stairs as a person with a disability.

48.    Defendants knew of Davis-Chenault's medical condition and disability, and that the extended elevator outage would cause her extreme hardship. Defendants' failure to ensure that the elevator was timely repaired or provide alternative housing to her as required by local ordinance demonstrates intentional discrimination based on disability.

49.    Plaintiff was aggrieved by Defendants' violations of the Unruh Act and is entitled to all available relief as set forth in Civil Code § 52.

## D.  FOURTH CLAIM
### VIOLATION OF CALIFORNIA DISABLED PERSONS ACT
### [Cal. Civil Code § 54 et seq.]

50.    Plaintiff realleges and incorporates by reference, as if fully set forth herein, the factual allegations contained in the preceding paragraphs.

51.    Allston Place is a housing accommodation within the meaning of the Disabled

Persons Act (DPA).

52.    Defendants have the obligation to maintain the elevator as an accessible path of travel, under the California Building Code and the Berkeley Municipal Code.

53.    Defendants have violated the DPA by denying full and equal access to a housing accommodation to individuals with disabilities such as Davis-Chenault. Without a working elevator or providing an alternative housing accommodation that does not require the use of stairs, Davis-Chenault was deprived of full and equal access to her housing accommodation.

54.    Plaintiff has been harmed and continues to be harmed because ongoing and repeated elevator outages trap her in her unit or force her to traverse four flights of stairs in immense pain and exacerbation of her medical conditions. Defendants' failure to maintain the elevator, promptly repair the elevator, or offer alternative accommodations to Plaintiff deprives her of full and equal access to her dwelling. Accordingly, she is entitled to all relief afforded under the DPA.

55.    Plaintiff does not seek injunctive relief under Cal. Civ. Code § 55.

### E.  FIFTH CLAIM
### VIOLATION OF BERKELEY MUNICIPAL CODE § 19.50.010 ET SEQ.

56.    Plaintiff realleges and incorporates by reference, as if fully set forth herein, the factual allegations contained in the preceding paragraphs.

57.    Allston Place has more than two stories, offers more than ten units for rent, and has an elevator. Accordingly, Chapter 19.50 of the Berkeley Municipal Code applies to Allston Place.

58.    As the owners of Allston Place and agents of the owners with responsibility for managing Allston Place, defendants are required to ensure that the elevator is accessible, usable, and in good working order at all times pursuant to Berkeley Municipal Code § 19.050.020. Defendants breached this obligation.

59.    When an elevator is out of service for more than 24 hours due to pending repairs that are beyond the control of the owners and their agents, Berkeley Municipal Code § 19.50.030 C requires the building operator to "locate and provide alternative housing for any person

COMPLAINT FOR DECLARATORY,                    11                    Case No.
INJUNCTIVE, AND MONETARY RELIEF

residing in the building who needs to use the elevator to gain access to or egress from their unit because of such person's impaired ability to climb stairs as a result of such person's physical disability, medical condition, infirmity, illness, or other similar circumstances." This alternative housing must be safe, sanitary, accessible and provided at defendants' expense, up to an amount that increases annually based on the CPI.

60.    Defendants violated the Berkeley Municipal Code by failing to locate, provide, and pay for alternative housing for Davis-Chenault as required by section 19.50.030.

61.    Accordingly, Davis-Chenault is entitled to injunctive relief, actual damages, statutory damages of $200 per day that the elevator remained out of service, and reasonable attorneys' fees and costs.

### F.  SIXTH CLAIM
### NUISANCE
### [Cal. Civil Code § 3479]

62.    Plaintiff realleges and incorporates by reference, as if fully set forth herein, the factual allegations contained in the preceding paragraphs.

63.    Defendants' failure to timely repair the elevator at Allston Place or provide adequate alternative housing to Davis-Chenault resulted in irreparable injury and constituted a public nuisance to Davis-Chenault and any other residents who were substantially restricted in access to or egress from their units as a result of their disabilities, medical conditions, infirmities, illnesses, or other similar circumstances. Berkeley Muni. Code § 19.50.030 E. Accordingly, defendants are liable for creating and maintaining a public nuisance.

64.    In addition, Defendants' failure to curb the excessive noise created by certain tenants and protect the right to quiet enjoyment constitutes a nuisance.

65.    Plaintiff has suffered damages and injuries as a result of the nuisances created by Defendants. Accordingly, she is entitled to relief.

///

///

COMPLAINT FOR DECLARATORY,                    12                        Case No.
INJUNCTIVE, AND MONETARY RELIEF

## VIII.   RELIEF

WHEREFORE, Plaintiff prays for entry of judgment:

1.      That declares that each defendant engaged in unlawful acts or practices in violation of each of the laws invoked in this complaint;

2.      That enjoins each defendant, including its officials, agents, partners, employees, assignees, and all persons acting in concert or participating with them from committing any of the unlawful acts or practices alleged in this complaint;

3.      That requires each defendant, including its officials, partners, agents, employees, assignees, and all persons acting in concert or participating with it, to undertake affirmative steps to remedy the effects of the unlawful acts or practices alleged in this complaint or proven in this action, including but not limited to maintaining the elevator in good repair, taking all reasonable steps to repair it immediately when it breaks down; relocating disabled tenants during extended outages as required by law; implementing policies for considering and granting reasonable accommodation requests; and training their relevant staff in their obligations towards tenants with disabilities;

4.      That awards compensatory damages to plaintiff; according to proof;

5.      That awards punitive damages to plaintiff, according to proof;

6.      That awards statutory damages or civil penalties, as provided by statute or ordinance alleged herein;

7.      That awards attorneys' fees, costs, and expenses to plaintiff; and,

8.      That grants all such additional relief to which plaintiff is entitled.

Respectfully submitted,

Dated: April 15, 2026                    McGUINNESS LAW GROUP, PC

Liza Cristol-Deman
Attorneys for Plaintiff

COMPLAINT FOR DECLARATORY,                    13                                        Case No.
INJUNCTIVE, AND MONETARY RELIEF